## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## ABERDEEN DIVISION

**DERRICK NELSON**                                                    **PETITIONER**

**v.**                                                       **No. 1:24CV103-GHD-RP**

**STATE OF MISSISSIPPI**                                            **RESPONDENT**

### MEMORANDUM OPINION

This matter comes before the court on the *pro se* petition of Derrick Nelson for a writ of *habeas corpus* under 28 U.S.C. § 2254. The State has moved to dismiss the petition as untimely filed under 28 U.S.C. § 2244(d)(2). Nelson has responded to the petition; the State has replied, and the matter is ripe for resolution. For the reasons set forth below, the State's motion to dismiss will be granted and the instant petition for a writ of *habeas corpus* will be dismissed with prejudice as untimely filed.

### Facts and Procedural Posture[1]

In his petition for writ of *habeas corpus* and supporting memorandum, Nelson challenges his 2016 first-degree murder conviction and resulting life sentence in the Lowndes County Circuit Court. Docs. 1, 14.

#### Conviction and Sentence

Nelson is in the custody of the Mississippi Department of Corrections (MDOC) and is currently housed at the South Mississippi Correctional Institution in Leakesville, Mississippi. The Mississippi Supreme Court summarized the relevant facts in Nelson's case:

---

[1] The court has drawn the facts and procedural posture from the State's motion to dismiss the instant petition for writ of *habeas corpus*, as they are both well-documented and uncontested.

¶2. On the evening of May 4, 2013, Nelson was celebrating his younger brother's graduation at his mother's house. Nelson's mother, Chiquita Nelson, two sisters and his mother's boyfriend, Willie Hood, Jr., also attended the party. Everyone had been drinking at the party, including Hood, who was intoxicated.[2] The celebration, though, ended tragically when Nelson shot Hood.

¶3. According to Nelson's statement to Officer George Harris, Nelson and Hood had argued over the keys to Hood's car, which was parked in the driveway. Nelson was attempting to stop Hood from driving. Hood told Nelson that Nelson could have Hood's car because he could get another one. Nelson then took the keys to Hood's car out of the vehicle and held them. Hood then started walking up the street. He returned, though, "hipe[d] up and talking loud." Nelson maintained that his sister Asia Nelson told him to give Hood's keys back to Hood since Hood would not have had the car if it had not been for her. Nelson stated that he placed the keys in Hood's hand.

¶4. After talking with his mother and Asia about Hood, Nelson walked to the mailbox and called his friend Smiley for a ride. Soon, Smiley pulled up in a white Dodge Charger. Nelson walked back to tell his mother that he was leaving; Asia, Nelson's mother and Hood were arguing. Nelson claimed that Hood was "jumping around talking loud" and tried to break the driver's side window of his car with his bare fist. Hood ended up breaking a wind guard on the vehicle. He also grabbed a beer bottle and threw it in Nelson's direction; the bottle glanced off Nelson's shoulder and burst against the rear window of Hood's car. Nelson's other sister, Kinuna Davis, later told Officer L.C. Cockrell that Hood was hitting his car with a beer bottle, that the beer bottle shattered on Hood's vehicle and that "some of the glass got on" Nelson, upsetting him.

¶5. At that point, Nelson reached into the Charger, which was parked on the street, and withdrew a black handgun from the passenger seat. He held the gun in his right hand, fired two shots[3] into the air and told Hood to "chill out" because he was not trying to hurt him.

¶6. According to Nelson, Hood then walked up to him, and they began to wrestle.[4] Nelson stated that they locked up and wrestled from the back of Hood's vehicle to the front. Nelson told officers that the "gun went off" when they fell back onto the hood of the car. Dr. Brent Davis, a forensic pathologist, later

---

[2] The Mississippi Supreme Court noted that "[i]t was undisputed at trial that Hood was intoxicated; his blood alcohol content that evening was later determined to be .21 percent." **Exhibit A** (*Nelson v. State*, 284 So. 3d 711, 713 n.2 (Miss. 2019)).

[3] The Mississippi Supreme Court noted that "Davis told Officer Cockrell that Nelson fired three or four shots. Officer Austin Shepard recovered four shells from the crime scene." *Nelson*, 284 So. 3d at 713 n.3.

determined that the cause of Hood's death was a gunshot wound to the head. Davis also determined that Hood's death was a homicide.

¶7. Nelson recounted that he did not really remember what happened after the shot. He stated that he was standing there in shock and that he threw his hands into the air. When his hands went up, Nelson stated that the gun left his hands. Asia and Davis testified that Nelson threw the gun over a fence. Officer Harris later recovered the gun on the other side of the fence that bordered an adjacent lot.

¶8. After the shooting, Nelson got into the Charger and drove away. Smiley dropped him at a friend's house. Later, Nelson called Chief McQueen who went and picked Nelson up from his friend's house.

**Exhibit A** (*Nelson v. State*, 284 So. 3d 711, 713 (Miss. 2019)).[4]

The Mississippi Supreme Court then summarized the trial testimony of Nelson's sister,

Kinuna Davis, regarding to Nelson's current repeated challenges to his conviction and sentence:

¶9. At trial, Davis failed to recall portions of her statement to Officer Cockrell on the night of the shooting. In her statement that night, Davis had stated that "My brother Derrick Nelson grabbed Willie Hood, Jr.[,] from behind and put his hands around his neck. Derrick place [sic] Willie Hood, Jr.[,] on the car and shot Willie Hood, Jr.[,] in the head." At trial, Davis testified that she remembered having made a similar statement to Officer Cockrell but that she did not remember its [sic] actually having happened that way.[5]

¶10. Davis did testify, though, that Hood "always acts, you know, crazy. We're used to that." She stated that Hood's acting crazy meant that "he beats up on things. Himself, you know, stuff like that. He does things like that." Also, Davis testified that Hood "kind of turned up a little bit after" Nelson fired the gun into the air. Ultimately, though, Davis did not recall the specifics of the actual fight. The following exchange took place on cross-examination:

Counsel:  But today as you sit in the stand, do you know how the actual altercation that ended up with Willie Hood being shot? [sic]

---

[4] The exhibits referenced in this memorandum opinion may be found attached to the State's motion to dismiss.

[5] The Mississippi Supreme Court noted that "[t]he trial court granted a limiting instruction that told the jury that it could only consider as impeachment evidence the portions of Davis's prior statement that she recanted or that she could not recall having made." *Id.* at 714 n.5.

| Davis: | No. |
|---|---|
| Counsel: | Do you recall seeing exactly what happened? |
| Davis: | No. |

*Id.* at 714–15.

The Mississippi Supreme Court then summarized the trial testimony of Nelson's other

sister, Asia:

¶11. Similar to Davis, Asia—when testifying at trial—did not recall portions of the statement she had made to Officer Watkins on the night of the shooting. She testified that she had told Officer Watkins that "I then seen [sic] Derrick walk up and shoot Willie Hood in the head." At trial, though, she testified that the shooting had actually occurred when Nelson and Hood were fighting and that her prior statement to Officer Watkins did not accurately describe the shooting.[6]

¶12. Asia also testified that the argument that evening was "normal. It's always arguments and altercations" between Chiquita, Nelson and Hood[.] She did testify, though, that after Nelson fired the gun in the air, Hood grabbed Nelson "like ... why did you shoot the gun in the air type of grab." According to Asia, after Hood grabbed Nelson, the argument moved from the street to the front yard "[a]nd it was the same argument, like what happened in the road ...." When asked if she meant the argument was a verbal argument after the gun had been fired, Asia replied, "Yes, sir." Also, when asked how far apart Hood and Nelson were in the argument in the front yard after the first shots had been fired, Asia replied, "They were like face-to-face."

¶13. Regarding the fight along Hood's vehicle, Asia testified that at the front of the car the fight was "just wild." She testified that she did not see the shooting but only saw Hood on the ground after hearing the gunshot.

¶14. Further, Asia recounted similar altercations between Hood and Nelson in the past. In those altercations, Asia testified that it was "[j]ust wild swinging" by Hood. Asia also stood up from the witness stand to demonstrate what she meant by "wild swinging": "Just swinging like, just every where [sic]."

*Id.* at 715.

---

[6] The Mississippi Supreme Court noted that "[t]he limiting instruction also applied to those portions of Asia's statement that she recanted or that she could not recall having made." *Id.* at 715 n.6.

- 4 -

The record further confirms that:

> ¶15. Nelson was indicted for murder and was tried. The trial court instructed the jury on first-degree murder, second-degree murder, misdemeanor manslaughter, heat-of-passion manslaughter, culpable-negligence manslaughter, accident, and self-defense. Nelson requested that the jury also be instructed on imperfect self-defense. While the trial court originally granted an imperfect self-defense instruction, it later withdrew the instruction and refused it.

*Id.*

The jury convicted Nelson of first-degree murder. **Exhibit B**; Doc. 16-1 at 131 (SCR, Vol. 1 at 123); Doc. 16-5 at 81 (SCR, Vol. 5 at 381). On May 19, 2016, the trial court sentenced him to life imprisonment in MDOC custody. **Exhibit B**; Doc. 16-1 at 146 (SCR, Vol. 1 at 138); Doc. 16-5 at 85 (SCR, Vol. 5 at 385).

### Direct Appeal

Nelson appealed his conviction and sentence through counsel. *See* Doc. 16-8 (SCR, Briefs). He raised three issues for review: (1) the trial court erred in refusing his imperfect self-defense instruction; (2) the State impermissibly commented on his decision not to testify and deprived him of a fair trial; and (3) the evidence was insufficient to support the jury's verdict. *See* Doc. 16-8 (SCR, Briefs). The Mississippi Court of Appeals held that, while the evidence was sufficient to sustain a first-degree murder conviction, the trial court erred in refusing Nelson's imperfect self-defense instruction. **Exhibit C** (*Nelson v. State*, 362 So. 3d 1077 (Miss. Ct. App. 2018), *reh'g denied*, Feb. 19, 2019). The Mississippi Court of Appeals thus reversed Nelson's conviction and remanded the case for a new trial. **Exhibit C**.

The State filed a petition for a writ of certiorari, which the Mississippi Supreme Court granted. Doc. 16-8 at 27 (SCR, Certiorari Folder). On certiorari review, the Mississippi Supreme Court "reverse[d] the judgment of the Court of Appeals because no evidentiary foundation in the record support[ed] the grant of an imperfect self-defense instruction." *Nelson,*

284 So. 3d at 715.  The Mississippi Supreme Court "d[id] agree, however, with the Court of Appeals that the evidence [wa]s sufficient to support the murder conviction." *Id.* at 715–16. Further, "[s]ince the Court of Appeals did not reach Nelson's fair-trial issue," the Mississippi Supreme Court "review[ed] it and" "f[ou]nd no reversible error." *Id.* at 716.  "Thus," the Mississippi Supreme Court "reverse[d] the decision of the Court of Appeals, and" affirmed Nelson's conviction and sentence.  *Id.*

The Mississippi Supreme Court first explained that "Nelson advanced a theory of an accidental shooting." *Id.* at 717.  "He relied on his statement to Officer Harris that the gun just 'went off.'" *Id.*  Indeed, "no testimony or other evidence at trial supported the conclusion that Nelson had believed it necessary to kill Hood." *Id.* (footnote omitted).  The Mississippi Supreme Court continued:

> Further, no witness testified or implied that Nelson shot Hood in order to protect himself.  Davis testified that she did not recall seeing exactly what happened and did not know how Hood ended up being shot.  Likewise, Asia did not see Hood's being shot; she only saw Hood on the ground after hearing the gunshot.

*Id.*  The Mississippi Supreme Court thus found:

> There is no evidence in the record from which the jury could have inferred that Nelson felt threatened by this particular argument with Hood.  The only differentiating factor in this altercation and past altercations was Nelson's decision to introduce a firearm into the ruckus after the beer bottle smashed on Hood's vehicle, spraying Nelson with some glass.

*Id.*  Further:

> Indeed, the actual evidence of Nelson's subjective belief supports the trial court's refusal of the instruction.  In her statement to Officer Cockrell, Davis recounted that Nelson "got upset" after the beer bottle smashed.  Also, according to Nelson, he told Hood to "chill out" after firing the handgun and that no one was trying to hurt him.  Further, Nelson maintained that he "was just standing there in shock" after the gun "went off."  These indications of Nelson's subjective belief about the shooting do not support the theory that Nelson killed Hood under a belief that doing so was necessary to his self-defense.

*Id.*

Second, the Mississippi Supreme Court held that the prosecutor's comments on Nelson's failure to call his friend or his mother, Chiquita, to testify were not impermissible comments on Nelson's failure to testify. *Id.* at 719. The Mississippi Supreme Court explained:

> While discussing the flight jury instruction, the prosecutor commented on the failure of Smiley to testify. The prosecutor argued, "In any event after that, by his own statement, he gets in a car with Smiley. Who apparently Smiley [sic] had been there the whole time and witnessed all of these events. We don't know who Smiley is. I can't issue a subpoena for him." At this point, defense counsel objected, and the trial court overruled the objection. The prosecutor continued,
>
> > But apparently, in his statement—and you can read it, he calls Smiley to come pick him up. So Smiley apparently was there when the shooting occurred, because he immediately got in the car and drove off with Smiley. I still don't know who Smiley is. And I haven't seen Smiley come up here to testify as to what he saw.

*Id.*

The Mississippi Supreme Court determined that "[t]he State did not deprive Nelson of a fair trial by commenting on his failure to testify." *Id.* "The prosecutor's remarks were directed at Nelson's failure to call Smiley to testify, not Nelson's right to remain silent." *Id.* Further, "[i]n his statement, Nelson told Officer Harris that Smiley was 'a friend of mine … in from Tuscaloosa, Alabama.'" *Id.* "As such, Smiley was more available to Nelson and presumptively in a closer relationship with him." *Id.* "Thus," the Mississippi Supreme Court concluded, "the trial court did not err in overruling Nelson's objection." *Id.*

Finally, the Mississippi Supreme Court rejected Nelson's argument regarding his mother, Chiquita. *Id.* at 719–20. The court ruled:

> At the end of his closing argument, the prosecutor noted that Nelson's mother, Chiquita, was in the front yard during the altercation and shooting. Next, he argued, "And you can attach[] whatever weight or importance you choose to attach to it. But the mother of the defendant is not here to testify." Thus, the prosecutor commented on Nelson's decision to not call Chiquita to testify and did

not comment on Nelson's right to remain silent. "Without reaching the question of whether the prosecutor's comments were otherwise objectionable, they were not a comment on the defendant's right to remain silent." *Anderson v. State*, 62 So. 3d 927, 941 (Miss. 2011).

*Id.*[7]

Nelson, through counsel, sought rehearing of the Mississippi Supreme Court's decision, and the Mississippi Supreme Court denied it on November 14, 2019. **Exhibit D**; Doc. 16-9 at 2 (SCR, Case Folder).

**First State Post-Conviction Proceeding**

Almost a year later, on October 5, 2020, Nelson filed a "Motion to Supplement Appellant Brief *Pro Se*" in his direct appeal case (with a signature date of September 30, 2020), which was also docketed in a separate state post-conviction proceeding. Doc. 16-10 at 294–300 (SCR, Cause No. 2020-M-01417). Nelson generally argued the following grounds for relief (as liberally construed and summarized below):

1.  "Newly discovered evidence not reasonably discoverable at trial" existed;[8]

2.  denial of a fair trial when the district attorney was allowed to make an improper statement during closing arguments on Nelson's decision "to stay silent";

3.  the trial court erred in failing to instruct the jury on imperfect self defense;

4.  a *Brady* violation occurred;

---

[7] The Mississippi Supreme Court further noted:

Also, as Nelson concedes, defense counsel failed to object at trial to the prosecutor's comment about Chiquita. As such, we decline to review the issue further. *See Dampier v. State*, 973 So. 2d 221, 235–36 (Miss. 2008) (concluding that failure to object to "comments in closing argument creates a procedural bar" when the comments did not infringe on constitutional rights).

*Id.* at n.10.

[8] Nelson generally cited "biological evidence." Doc. 16-10 at 294 (SCR, Cause No. 2020-M-01417).

5.      ineffective assistance of counsel;

6.      "Nelson had never received the opportunity to understand the law on first-degree murder—murder to manslaughter[;]"

7.      the testimony of the State's witnesses was uncorroborated;

8.      "mishandling of [the] State's witnesses[;]"

9.      defense counsel's cumulative performance was constitutionally ineffective.

Doc. 16-10 at 294–300 (SCR, Cause No. 2020-M-01417).

On January 29, 2021, the Mississippi Supreme Court denied relief. **Exhibit E**; Doc. 16-10 at 292 (SCR, Cause No. 2020-M-01417). The court observed that Nelson's "Motion to Supplement Appellant Brief *Pro Se*" was "in the nature of an application for leave to file a motion for post-conviction collateral relief in the trial court [(PCR motion)] and w[ould] be treated as such." **Exhibit E**; Doc. 16-10 at 292 (SCR, Cause No. 2020-M-01417). The Mississippi Supreme Court concluded that "the issues raised in the application d[id] not 'present a substantial showing of the denial of a state or federal right[;]' therefore, the application [wa]s not well-taken and should be denied." **Exhibit E**; Doc. 16-10 at 292 (SCR, Cause No. 2020-M-01417).

**Second State Post-Conviction Proceeding**

On April 19, 2021, Nelson filed his second *pro se* state PCR motion, alleging "[i]neffective assistance of counsel" based on "the 6th Amendment right to counsel that a defendant has through most pre-trial [and] appeal proceedings" (with a signature date of April 14, 2021). Doc. 16-10 at 284–91 (SCR, Cause No. 2020-M-01417). Nelson alleged that "his counsel was ineffective because counsel advised him not to testify," and he complied, "[n]ot knowing that his imperfect self[-]defense jury instruction relied on his testimony." Doc. 16-10 at

284–91 (SCR, Cause No. 2020-M-01417).  On July 21, 2021, the Mississippi Supreme Court

"denied" Nelson's second state PCR motion. **Exhibit F**; Doc. 16-10 at 281–82 (SCR, Cause No.

2020-M-01417).  The Mississippi Supreme Court explained:

> Nelson filed his first Application for Leave to Proceed, which th[e c]ourt denied on January 29, 2021.  Nelson filed the instant application and claims that he received ineffective assistance of counsel because h[is] attorney advised him not to testify.  Nelson believes his testimony would have supported the imperfect self-defense jury instruction he requested but was denied.

**Exhibit F**; Doc. 16-10 at 281 (SCR, Cause No. 2020-M-01417).  The Mississippi Supreme Court

held:

> Nelson's application is barred as a successive writ pursuant to Mississippi Code Section 99-39-27(9) and the issue is barred by the doctrine of *res judicata* pursuant to Mississippi Code Section 99-39-21(3).  In exceptional circumstances, an ineffective-assistance claim might be excepted from the procedural bars.  *See Chapman v. State*, 167 So. 3d 1170, 1174–75 (Miss. 2015); *Bevill v. State*, 669 So. 2d 14, 17 (Miss. 1996); *Brown v. State*, 187 So. 3d 667, 671 (Miss. Ct. App. 2016).  And to merit waiving the bars, "[t]here must at least appear to be some basis for the truth of the claim." *Fluker v. State*, 170 So. 3d 471, 475 (Miss. 2015) (internal quotation marks omitted) (quoting *Means v. State*, 43 So. 3d 438, 442 (Miss. 2010)).  After due consideration, the panel finds that Nelson's claim of ineffective assistance of counsel is insufficient to merit waiving the procedural bars.

**Exhibit F**; Doc. 16-10 at 281–82 (SCR, Cause No. 2020-M-01417).  The Mississippi Supreme

Court thus denied Nelson's second state PCR motion under the doctrine of *res judicata* and as

successive.  **Exhibit F**; Doc. 16-10 at 281–82 (SCR, Cause No. 2020-M-01417).

### Third State Post-Conviction Proceeding

On September 28, 2021, Nelson filed his third *pro se* state PCR motion (signed on

September 15, 2021).  Doc. 16-10 269–79 (SCR, Cause No. 2020-M-01417).  On January 10,

2022, the Mississippi Supreme Court again denied it as both *res judicata* and as successive.

**Exhibit G**; Doc. 16-10 at 266–67 (SCR, Cause No. 2020-M-01417).  The court explained:

> Nelson has filed two prior applications for leave to proceed, and both have been denied. In the instant application, Nelson argues that he did not receive a fair trial due to prosecutorial misconduct. Nelson's application is barred as a successive writ pursuant to Mississippi Code Section 99-39-27(9) and the issue is barred by the doctrine of *res judicata* pursuant to Mississippi Code Section 99-39-21(3). Nelson has not presented any reasoning that the exceptions to the procedural bars are applicable here. Therefore, after due consideration, the panels finds the application should be denied.

**Exhibit G**; Doc. 16-10 at 266–67 (SCR, Cause No. 2020-M-01417).

### Fourth State Post-Conviction Proceeding

On February 24, 2022, Nelson filed his fourth *pro se* state PCR motion (signed on February 16, 2022). Doc. 16-10 238–65 (SCR, Cause No. 2020-M-01417). Nelson attached his own handwritten affidavit and a typed copy of his statement provided to law enforcement in May 2013. Doc. 16-10 at 252–61 (SCR, Cause No. 2020-M-01417); *compare with* Doc. 16-6 at 18–20 (handwritten statement).

On July 27, 2022, the Mississippi Supreme Court again denied Nelson's fourth PCR motion as *res judicata* and as successive – and also determined that it was frivolous. **Exhibit H**; Doc. 16-10 at 231–36 (SCR, Cause No. 2020-M-01417). The Mississippi Supreme Court ruled:

> Since th[e c]ourt's decision affirming Nelson's direct appeal, Nelson has filed three applications for leave to proceed, and all three have been denied. In this fourth application, the crux of his argument is that he received ineffective assistance of counsel based on his counsel's recommendation that he not testify at trial.
>
> Nelson's application is barred as a successive writ pursuant to Mississippi Code Section 99-39-27(9) and is also barred by the doctrine of *res judicata* pursuant to Mississippi Code Section 99-39-21(3). Nelson has not presented any reasoning that the exceptions to the procedural bars are applicable here. Further, while claims of ineffective assistance of counsel have been excepted from the procedural bars, this Court has held that there must be an "arguable basis" for the claim. *Means v. State*, 43 So. 3d. 438 (Miss. 2010). Nelson has not presented an arguable basis for his claim.

**Exhibit H**; Doc. 16-10 at 231 (SCR, Cause No. 2020-M-01417). The court thus warned Nelson "that future filings deemed frivolous may result not only in monetary sanctions but also restrictions on filing applications for post-conviction collateral relief (or pleadings in that nature) *in forma pauperis*." **Exhibit H** (citing En Banc Order, *Fairley v. State*, 2014-M-01185 (Miss. May 3, 2018) (citing Order, *Bownes v. State*, 2014-M-00478 (Miss. Sept. 20, 2017))); Doc. 16-10 at 231–32 (SCR, Cause No. 2020-M-01417).

### Fifth State Post-Conviction Proceeding

On August 25, 2022, Nelson filed his fifth *pro se* state PCR motion (signed on August 17, 2022). Doc. 16-10 at 200–29 (SCR, Cause No. 2020-M-01417). On January 18, 2023, the Mississippi Supreme Court denied it as successive and held that the issue raised had been waived. **Exhibit I**; Doc. 16-10 at 193–98(SCR, Cause No. 2020-M-01417). The state supreme court explained:

> Since th[e c]ourt's decision affirming Nelson's conviction and sentence on direct appeal, Nelson has filed four applications for leave to proceed, and all four have been denied. In this fifth application, Nelson argues that his [sic] there was not sufficient evidence to support his indictment for first-degree murder. Nelson's application is barred as a successive writ pursuant to Mississippi Code Section 99-39-27(9) (Rev. 2020), and the issue presented is also waived pursuant to Mississippi Code Section 99-39-21(1) (Rev. 2020). Further, Nelson has not presented any reasoning that the exceptions to the procedural bars are applicable here.

**Exhibit I**; Doc. 16-10 at 193 (SCR, Cause No. 2020-M-01417).

Finally, the Mississippi Supreme Court cited its prior warning to Nelson on frivolous filings and concluded that his fifth PCR motion was frivolous – and restricted Nelson "from filing further petitions for post-conviction relief (or pleadings in that nature) that are related to his conviction of murder and corresponding sentence." **Exhibit I**; Doc. 16-10 at 193–94 (SCR, Cause No. 2020-M-01417).

**Sixth State Post-Conviction Proceeding**

On July 31, 2023, Nelson filed his sixth *pro se* state PCR motion (signed on July 26, 2023).  Doc. 16-10 at 124–91 (SCR, Cause No. 2020-M-01417).  Nelson attached a copy of a "Supplemental Offense Report" of "Inv. G. Harris" with the "Columbus Police Department Criminal Investigation Division."  Doc. 16-10 at 190 (SCR, Cause No. 2020-M-01417).  Investigator Harris stated that he "attempt[ed] to take a statement from Chiquita Nelson," and she "refuse[d] to cooperate."  Doc. 16-10 at 190 (SCR, Cause No. 2020-M-01417).  Harris further stated:

> Chiquita made the following comment within her kitchen while trying to [light] a cigarette with the stove element.  Ms. Chiquita stated Willie was busting the window out of his vehicle.  Derrick asked Willie why he hit him with a bottle.  Then I saw Willie fall to the ground.  I never saw a gun or anyone shoot.  She then stated that['s] all I know and please leave me alon[e].

Doc. 16-10 at 190 (SCR, Cause No. 2020-M-01417).  Nelson also attached an affidavit from his mother, Chiquita, dated June 1, 2023.  Doc. 16-10 at 191 (SCR, Cause No. 2020-M-01417).

Chiquita stated:

> On May 18, 2013, i witnessed the shooting that killed Willie Hood jr at my residence 714 Pine st Columbus Ms, 39701.  Derrick fired a gun into the air in an attempt to calm Willie down because he was drunk and irrational to the point he was throwing beer bottles and trying to burst the windows out of his car.  After Derrick fired the gun in the air, he was asking Willie to calm down, and why was he throwing bottles?  Willie started walking towards Derrick asking him why he shooting in the air, then all of a sudden they were wrapped up with each other.  When they made it to the front of the cars, it was like they were trying to throw each other on the ground when I heard the gun go off, then Willie fell.  After standing there for a moment in disbelief, I then ran to Willie and held him until the police arrived.

Doc. 16-10 at 191 (SCR, Cause No. 2020-M-01417) (unaltered).

On December 3, 2023, the Mississippi Supreme Court denied Nelson's sixth state PCR motion as meritless.  **Exhibit J**; Doc. 16-10 at 122 (SCR, Cause No. 2020-M-01417).  The

Mississippi Supreme Court observed that "Nelson acknowledge[d] that his application [wa]s procedurally barred; however, he argu[ed] that he ha[d] newly discovered evidence that would serve as an exception to the application of the procedural bars." **Exhibit J**; Doc. 16-10 at 122 (SCR, Cause No. 2020-M-01417). "After due consideration," the Mississippi Supreme Court denied Nelson's sixth PCR motion because "the evidence Nelson submit[ted] d[id] not constitute newly discovered evidence to warrant relief. **Exhibit J**; Doc. 16-10 at 22 (SCR, Cause No. 2020-M-01417).

On December 20, 2023, Nelson filed a letter motion requesting an extension of time to file a motion for reconsideration of the Mississippi Supreme Court's order denying his sixth state PCR motion. Doc. 16-10 at 82–121 (SCR, Cause No. 2020-M-01417). Nelson attached to his motion a copy of another affidavit from his mother, Chiquita, dated December 29, 2023. Doc. 16-10 at 87 (SCR, Cause No. 2020-M-01417). Chiquita stated:

> On or about the date May 18th, 2013, I was questioned by a Detective, investigating the shooting that led to the death of Willie Hood Jr. I refused to give a statement on the night of, because I was in no condition to answer any questions. Prior to Derrick Nelson trial, I was contacted and asked by Derrick Nelson and his attorney, would i be willing to give a written statement as to what I witnessed on the night of May 18th, 2013, and would I be willing to testify if it came down to it? I said yes, that I would at the time; however, I couldn't go through with it because i didn't have the strength needed to relive that night in order to speak openly about what happened. For those same reasons, I was unable to show up and support Derrick Nelson during his trail. I was aware that there were questions that neded to be answered, I just couldn't answer them at the time. I was still mentally and emotionally dealing with the tragedy in my own way. Willie Hood Jr was my boyfriend at the time of his death, and Derrick is my son. In June, 2023, i wrote for the first time, a sworn affidavit in hopes to have the opportunity to answer any and all questions that remains unanswered, at the earliest convenience. Until the date stated above ( June 2023 ), I never told anyone officially exactly what I witnessed on the night of May 18th, 2023.

Doc. 16-10 at 87 (SCR, Cause No. 2020-M-01417) (unaltered).

- 14 -

On February 12, 2024, the Mississippi Supreme Court denied Nelson's motion. **Exhibit K**; Doc. 16-10 at 81 (SCR, Cause No. 2020-M-01417). The court explained that "Mississippi Rule of Appellate Procedure 27(h) provides that reconsideration of rulings on motions are generally not permitted except in certain instances enumerated in the rule[,]" and "[r]econsideration of th[e c]ourt's rulings on PCR applications for leave are not permitted." **Exhibit K**; Doc. Doc. 16-10 at 81 (SCR, Cause No. 2020-M-01417).

**Seventh State Post-Conviction Proceeding**

On April 26, 2024, Nelson filed his seventh state PCR motion in the Mississippi Supreme Court (signed on April 24, 2024). Doc. 16-10 at 9–80 (SCR, Cause No. 2020-M-01417). He alleged the following "newly discovered evidence" in support of his challenges to his conviction and sentence: "The State witnesses Asia Nelson and Kiauna Davis committed 'perjury' when they gave statements to CPD (Columbus Police Department) containing false material facts surrounding the death of Willie Hood, Jr." Doc. 16-10 at 11 (SCR, Cause No. 2020-M-01417). Nelson attached copies of pages from his "trial transcript containing confessions" and the two previously submitted affidavits from his mother, Chiquita. Doc. 16-10 at 11 (SCR, Cause No. 2020-M-01417). On June 24, 2024, Nelson filed a motion to amend his seventh PCR motion "to submit supportive arguments as well as point out areas of the law." Doc. 16-10 at 3–7 (SCR, Cause No. 2020-M-01417).

On August 2, 2024, the Mississippi Supreme Court denied Nelson's seventh state PCR motion as meritless. **Exhibit L**; Doc. 16-10 at 2 (SCR, Cause No. 2020-M-01417). The court observed that "Nelson acknowledge[d] that his application [wa]s procedurally barred; however, he argu[ed] that he ha[d] newly discovered evidence that would serve as an exception to the application of the procedural bars." **Exhibit L**; Doc. 16-10 at 7 (SCR, Cause No. 2020-M-

01417).  The Mississippi Supreme Court then denied Nelson's seventh PCR motion.  **Exhibit L**; *see also* Doc. 16-10 at 7 (SCR, Cause No. 2020-M-01417).

### Federal *Habeas Corpus* Petition

After the filing of his seventh state PCR motion, but prior to the Mississippi Supreme Court's ruling on it, Nelson filed his *pro se* federal petition for writ of *habeas corpus* in the United States District Court for the Southern District of Mississippi on May 6, 2024.  Doc. 1.  Nelson failed to date his federal petition (Doc. 1 at 15), but it was postmarked for mailing to the District Court for the Southern District of Mississippi on May 1, 2024 (Doc. 1-3).  Nelson also filed a motion to stay his federal *habeas corpus* proceedings because his seventh state PCR motion was still pending before the Mississippi Supreme Court.  Doc. 3.  On June 3, 2024, the District Court for the Southern District of Mississippi transferred Nelson's federal petition to this court.  Doc. 4.

On June 12, 2024, Nelson filed another motion to stay his federal *habeas corpus* proceedings because his seventh state PCR motion was still pending before the Mississippi Supreme Court.  Doc. 7.  On August 21, 2024, Nelson filed a motion to proceed with his federal petition because the Mississippi Supreme Court denied his seventh state PCR motion.  Doc. 9. On January 29, 2025, the court entered an order dismissing Nelson's motions to stay as moot and granting his motion to proceed.  Doc. 11.

In his federal petition for writ of *habeas corpus*, Nelson identifies three grounds for federal *habeas corpus* relief:

> Ground One:     Newly discovered evidence/perjury
>
> Ground Two:     Violation of Sixth Amendment Right to a fair "trial free
>                 from prejudice with an impartial jury"

Ground Three:        Violation of Fourteenth Amendment Right to due process
and equal protection

Doc. 1.

Nelson's claims all center on his challenges to his sisters' statements and testimony. *See* Doc. 1. In support of Ground One, Nelson asserts that his sisters, two of the State's witnesses, "both admitted to lying to the police the night they both gave statements pertaining to the death of Willie Hood, Jr., in open court, and gave a completely different version of the event during trial." Doc. 1 at 5. Nelson states that he "now ha[s] a signed affidavit from another key witness that was present at the scene, but never gave a statement in the matter, to prove that Asia and Kiauna lied in their first testimony given to the police department." Doc. 1 at 5. In support of Ground Two, Nelson likewise challenges his sisters' testimony, alleging that they committed the "criminal act of perjury[,]" which "prejudiced the courtroom, depriving [him of his] right to a fair trial." Doc. 1 at 7. Nelson continues his challenges in support of Ground Three, asserting that his sisters' statements "to the police pointed towards murder." Doc. 1 at 8. However, Nelson contends that neither "[t]he police department, nor the prosecution, investigated further into the conflicting statements to see if murder was the case." Doc. 1 at 8. As a result, Nelson was "tried and convicted of 1st degree murder and sentenced to life in prison." Doc. 1 at 8.

Nelson seeks to apply the "factual predicate" exception under 28 U.S.C. § 2244(d) and alleges that he has "newly discovered evidence" that "is a legal door that open[s] to restart the 'AEDPA' clock, as long as the petition is filed within one year of the newly discovery [sic]." Doc. 1 at 13–14. Nelson argues that his "petition should be accepted [as timely] because it meets all requirements." Doc. 1 at 14. According to Nelson:

On June 1, 2023, Chiquita Nelson, a witness to the shooting, had a[n] affidavit
signed, stating what she witnessed on the night Willie Hood, Jr. was killed. Later,
in December of 2023, Chiquita presented a second affidavit, stating why it took

> her so many years to come forth. This proves that no matter how much due
> diligence the petitioner did, he was not able to obtain this new information sooner.

Doc. 1 at 14. Nelson attaches to his petition an unfiled copy of his seventh state PCR motion and

supporting documents, including his mother's June and December 2023 affidavits. Doc. 1-1.

Finally, following the court's order directing the State to answer the petition, Nelson filed

a "memorandum of law enjoining pending petition for *habeas corpus*." Doc. 14. Nelson

references the constitutional right to the effective assistance of counsel and his previously

submitted grounds for federal *habeas corpus* relief discussed above. Doc. 14.

In his prayer for relief, Nelson requests that the court overturn the Mississippi Supreme

Court's decision and allow him "to proceed in the trial court, or dismiss the case and vacate the

sentence imposed by the trial court." Doc. 1 at 15.

**One-Year Limitations Period**

Decision in this case is governed by 28 U.S.C. § 2244(d), which provides:

(d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas
corpus by a person in custody pursuant to the judgment of a State court. The limitation
period shall run from the latest of –

> (A) the date on which the judgment became final by the conclusion of
> direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by
> State action in violation of the Constitution or the laws of the United
> States is removed, if the applicant was prevented from filing by such State
> action;

> (C) the date on which the constitutional right asserted was initially
> recognized by the Supreme Court, if the right has been newly recognized
> by the Supreme Court and made retroactively applicable to cases on
> collateral review; or

> (D) the date on which the factual predicate of the claim or claims
> presented could have been discovered through the exercise of due
> diligence.

(2) The time during which a properly filed application for State postconviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U. S.C. § 2244(d)(1) and (2). Unless the narrow exceptions of § 2244(d)(1)(B–D) apply, the Antiterrorism and Effective Death Penalty Act (AEDPA) requires that a federal petition for writ of *habeas corpus* be filed within one year of the date that the petitioner's judgment of conviction becomes final, subject to tolling for the period when a properly-filed motion for post-conviction relief is pending in the state court.[9] *See, e.g., Roberts v. Cockrell*, 319 F.3d 690 (5th Cir. 2003); *Cantu-Tzin v. Johnson*, 162 F.3d 295 (5th Cir. 1998); *Sonnier v. Johnson*, 161 F.3d 941, 944 (5th Cir. 1998); *Flanagan v. Johnson,* 154 F.3d 196, 199 n.1 (5th Cir. 1998). As discussed below, Nelson did not file his federal petition before the deadline.

**Nelson's Conviction Became Final on February 12, 2020**

The Mississippi Supreme Court denied Nelson's motion for rehearing in his direct appeal on November 14, 2019. **Exhibit D**; Doc. 16-9 at 2 (SCR, Case Folder). He did not petition the Supreme Court for a writ of certiorari, and his judgment became final under AEDPA when his 90-day period for doing so expired on February 12, 2020 (November 14, 2019 + 90 days). *See* 28 U.S.C. § 2244(d)(1)(A); Sup. Ct. R. 13.1 and 13.3; *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012) (when a petitioner fails to seek certiorari review in the Supreme Court, "the judgment becomes final at the 'expiration of his time for seeking such review'—when the time for pursuing direct review in [the Supreme Court], or in the state court, expires").

---

[9] The exceptions under 28 U.S.C. § 2244(d)(1) (B–D) are inapplicable here. As discussed below, Nelson has not identified any *valid* impediment to filing under § 2244(d)(1)(B). Nor does he assert a new constitutional right made retroactive on collateral review – or a *valid* factual predicate to any claim that could not have been discovered with the exercise of due diligence under § 2244(d)(1)(C)–(D).

Under 28 U.S.C. § 2244(d)(1)(A), Nelson had one year from February 12, 2020—until February 12, 2021—to file a federal petition for writ of *habeas corpus* in this court, absent statutory or equitable tolling – or other applicable exception (February 12, 2020 + 1 year). *See* 28 U.S.C. § 2244(d). As discussed below, Nelson is entitled to neither the factual predicate start date of his one-year statute of limitations under 28 U.S.C. § 2244(d)(1)(D) – nor to equitable tolling; nor is the actual innocence exception applicable. Nelson does, however, enjoy statutory tolling for his first, second, and third state PCR motions.[10] Nonetheless, his petition is untimely and will be dismissed with prejudice for that reason. *See* 28 U.S.C. § 2244(d).

### The "Factual Predicate" Start Date Is Inapplicable

Nelson contends that he "meets all requirements" for the application of the "factual predicate" exception under 28 U.S.C. § 2244(d). Doc. 1 at 13–14. Nelson alleges that he has "newly discovered evidence" (his mother's June and December 2023 affidavits) that "is a legal door that open[s] to restart the 'AEDPA' clock, as long as the petition is filed within one year of the newly discovery [sic]." Doc. 1 at 13–14. Nelson states that, "in December of 2023, Chiquita presented a second affidavit, stating why it took her so many years to come forth." Doc. 1 at 14. Nelson believes that "[the affidavit] proves that no matter how much due diligence [he] did, he was not able to obtain this new information sooner." Doc. 1 at 14. His argument is without merit.

A petitioner may use the factual predicate start date to overcome the expiration of the limitations period when he "is on notice of the facts which would support a claim, not the date on which the petitioner has in his possession evidence to support his claim." *Osborne v. Hall*, 934

---

[10] As discussed in detail below, statutory tolling was not available during the pendency of Nelson's Fourth through Seventh PCR motions because they were filed after the one-year federal *habeas corpus* deadline had expired.

F.3d 428, 432 (5th Cir. 2019) (quoting *In re Davila*, 888 F.3d 179, 189 (5th Cir. 2018)). Indeed, "the time bar does not necessarily run from the date on which the petitioner alleges he discovered the new evidence, but rather the date on which he gains notice about such facts." *In re Davila*, 888 F.3d at 189 (citing *In re Young*, 789 F.3d 518, 528 (5th Cir. 2015)). "Section 2244(d)(1)(D) does not convey a statutory right to an extended delay, in this case more than [a decade], while a *habeas* petitioner gathers every possible scrap of evidence that might, by negative implication, support his claim." *Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir. 1998).

As the Mississippi Supreme Court stated, though "Nelson's mother, Chiquita, was in the front yard during the altercation and [Nelson's] shooting" of her boyfriend, he chose not to call her as a witness to testify at trial. *Nelson*, 284 So. 3d at 719–20. She also refused to cooperate with law enforcement. Chiquita's knowledge regarding her son's shooting of her boyfriend or contained in her affidavits predates the criminal case.

In addition, as Chiquita is Nelson's mother – and was present during the altercation and murder of her boyfriend – Nelson certainly could have obtained her affidavit much sooner with reasonable diligence. *Nelson*, 284 So. 3d at 719–20. Finally, as to Nelson's sixth and seventh state PCR motions alleging that Chiquita's June 2023 affidavit (submitted with Nelson's sixth PCR motion and resubmitted with his seventh PCR motion) and her December 2023 affidavit (submitted with Nelson's seventh PCR motion), the Mississippi Supreme Court rejected them as "newly discovered evidence." **Exhibits J**, **K**. Nelson has conflated "his knowledge of the factual predicate of his claim with the time permitted for gathering evidence in support of that claim." *Flanagan*, 154 F.3d at 199. The delay in gathering that evidence is fatal to his attempt to use the factual predicate start date, and the initial *habeas corpus* deadline remained February 12, 2021. *See* 28 U.S.C. § 2244(d)(1)(D).

**Statutory Tolling While Nelson's First, Second,
and Third PCR Motions Were Pending**

Under 28 U.S.C. § 2244(d)(2), Nelson enjoys statutory tolling during the pendency of his first, second, and third motions for state post-conviction collateral relief (but not during the pendency of his fourth through seventh PCR motions). His first PCR motion was filed on September 30, 2020 – before the February 12, 2021, *habeas corpus* limitations deadline expired. The Mississippi Supreme Court denied the PCR motion as meritless on January 29, 2021; as such the motion was pending for 122 days. The new deadline thus became June 14, 2021 (February 12, 2021 + 122 days).

Nelson then filed his second state PCR motion on April 14, 2021, before the extended *habeas corpus* deadline expired, and the Mississippi Supreme Court dismissed the motion 99 days later on July 21, 2021, both as *res judicata* and as a successive PCR request. Nelson thus enjoys an additional 99 days of statutory tolling, and the deadline became September 21, 2021 (June 14, 2021 + 99 days).

Finally, Nelson filed his third PCR motion on September 15, 2021, and the Mississippi Supreme Court denied the motion on January 10, 2022, thus extending the *habeas corpus* deadline by 118 days to January 17, 2022 (September 21, 2021 + 118 days). Hence, after the three valid extensions due to statutory tolling, Nelson's federal *habeas corpus* deadline was January 17, 2022.[11]

**Equitable Tolling Does Not Apply**

---

[11] Nelson's fourth through seventh state PCR motions were filed on February 16, 2022; August 17, 2022; July 26, 2023; and April 26, 2024 – all *after* the extended federal *habeas corpus* deadline expired. As such, Nelson does not enjoy statutory tolling while those four PCR motions were pending. *See Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000) (a "state *habeas* application did not toll the limitation period under section 2244(d)(2) because it was not filed until after the period of limitation had expired")

- 22 -

The petitioner does not enjoy equitable tolling of the limitations period. "The doctrine of equitable tolling preserves a [petitioner's] claims when strict application of the statute of limitations would be inequitable." *United States v. Patterson*, 211 F.3d 927, 930 (5th Cir. 2000) (per curiam) (internal quotations omitted). The one-year limitations period of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") in 28 U.S.C. § 2244(d) is not jurisdictional; thus, it is subject to equitable tolling. *Holland v. Fla.*, 560 U.S. 631, 645–46 (2010), *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002).

The decision whether to apply equitable tolling turns on the facts and circumstances of each case. *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000); *see also Alexander v. Cockrell*, 294 F.3d 626, 628 (5th Cir. 2002) (per curiam). However, a court may apply equitable tolling only "in rare and exceptional circumstances." *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998); *see also Minter v. Beck,* 230 F.3d 663, 666–67 (4th Cir. 2000) ("[E]quitable tolling of the AEDPA's one year limitation period is reserved for those rare instances where – due to circumstances external to the party's own conduct – it would be unconscionable to enforce the limitation period against the party and gross injustice would result.") (quotation omitted). The petitioner bears the burden of establishing that equitable tolling is warranted. *See Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir.), modified on reh'g, 223 F.3d 797 (2000) (per curiam).

To meet his burden, the petitioner must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" of timely filing his § 2255 motion. *Lawrence v. Florida*, 549 U.S. 327, 127 S.Ct. 1079, 1085, 166 L.Ed. 2d 924 (2007) (applied in the context of the one-year limitations period under 28 U.S.C. § 2255). The petitioner need only show "reasonable diligence, not maximum feasible diligence." *Holland v. Florida*, 560 U.S. 631, 653, 130 S. Ct. 2549, 2565, 177 L. Ed. 2d 130 (2010) (internal citations

and quotations omitted).  A petitioner's delay of four months can show that he has not diligently pursued his rights.  *Melancon v. Kaylo*, 259 F.3d 401, 408 (5th Cir. 2001).

Further, "ignorance of the law is [not] sufficient to justify equitable tolling."  *Johnson v. Quarterman*, 483 F.3d 278, 286 (5th Cir. 2007) (internal quotation and citation omitted); *see also Felder v. Johnson*, 204 F.3d 168, 170 (5th Cir. 2000); *Fisher*, 174 F.3d at 713–14; *Alexander*, 294 F.3d at 629.  Likewise, "neither a plaintiff's unfamiliarity with the legal process nor his lack of representation during the applicable time period merits equitable tolling."  *Turner v. Johnson*, 177 F.3d 390, 392 (5th Cir. 1999).  Neither does a *pro se* prisoner's limited access to outside information constitute a "rare and exceptional" circumstance to excuse untimely filing.  *Fisher*, 174 F.3d at 713–14 (the miscalculation of a *habeas corpus* limitations period, even by a *pro se* petitioner, is not grounds for equitable tolling).  Nor is proceeding *pro se* on federal *habeas corpus* review a "rare and exceptional" circumstance because "it is typical of those bringing a § 2254 claim."  *Felder*, 204 F.3d at 170.

In the present case, equitable tolling of the one-year *habeas corpus* limitations period does not apply because Nelson has meet neither requirement for equitable relief.  His misunderstanding of the calculation of the *habeas corpus* deadline does not warrant equitable tolling.  *See Fisher*, 174 F.3d at 713–14.

In addition, even if Nelson had shown that an "extraordinary circumstance" prevented the timely filing his federal *habeas corpus* petition, equitable tolling is not guaranteed, as he must also show that "he pursued his rights diligently."  *Smith*, 848 F. App'x at 628 (citing *Holland*, 560 U.S. at 649); *see also id*. at 629 ( "a component of the obligation to pursue rights diligently is not to wait until near a deadline to make a filing, then seek equitable tolling when something goes awry"); *see also Palacios*, 723 F.3d at 604–08.

As set forth above, a petitioner need only show "reasonable diligence, not maximum feasible diligence," *Jackson*, 933 F.3d at 411 (quoting *Holland*, 560 U.S. at 653); however, "'delays of the petitioner's own making do not qualify' for equitable tolling." *Clarke*, 721 F. 3d at 344 (quoting *In re Wilson*, 442 F.3d at 875). Instead, a petitioner must show that a "causal relationship [exists] between the extraordinary circumstance and his delay" – a relationship that does not exist "if the petitioner, acting with reasonable diligence, could have filed [his petition] on time notwithstanding the extraordinary circumstance." *Smith*, 848 F. App'x at 628.

Equitable tolling does not apply in the present case because Nelson was not diligent in pursuit of his claims. He waited to file his first state PCR motion seven months after his conviction and sentence became final on direct review. *See Prater v. Hooper*, 2023 WL 2987571, *1 (5th Cir. Apr. 18, 2023) (citing *Jackson*, 933 F.3d at 411) (a petitioner's "failure to file his state [PCR] application for almost a full year after his conviction became final [under] § 2244(d)(1)(A) strongly weighs against equitable tolling"). Indeed, Nelson did not present his "newly discovered" evidence (his mother's affidavits) until his sixth and seventh state PCR motions in 2023 and 2024.

Nelson cannot show that he was reasonably diligent in seeking collateral review of his conviction and sentence and in filing his federal petition for writ of *habeas corpus*. *See Stroman v. Thaler*, 603 F.3d 299, 302–03 (5th Cir. 2010) (denial of equitable tolling was proper when "the state [PCR] was not filed until nearly seven months after the conviction became final and at a time when there remained only five months of the section 2244(d)(1) one year period"); *see also North v. Davis*, 800 F. App'x 211, 214–15 (5th Cir. 2020) (an "eleven-month delay in filing [petitioner's] initial state application weighs against a finding of diligence"). As a result of

Nelson's own delays, he ultimately filed his *pro se* petition for writ of *habeas corpus* in this court over two years beyond the filing deadline.

In sum, Nelson's request to invoke equitable tolling will be denied. He was responsible for his own delay in seeking *habeas corpus* relief, and he did not proceed with the requisite diligence. For these reasons, the deadline for Nelson to file a petition for writ of *habeas corpus* challenging his 2016 first-degree murder conviction and sentence remained January 17, 2022.

**Nelson Has Not Shown that He Is Actually Innocent of the Crime**

To invoke actual innocence to overcome the expiration of the one-year AEDPA statute of limitations, a petitioner must make a credible showing of innocence, which requires him to produce new evidence sufficient to persuade the court that "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *McQuiggin*, *v. Perkins*, 569 U.S. 383, 386 (2013). (citing *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar ... or, as in this case, expiration of the statute of limitations." *Id*. As discussed below, Nelson has not met this burden; as such, he has not made a credible claim of actual innocence to overcome the time bar.

Nelson relies on his mother's affidavits as "newly discovered evidence;" however, they are not sufficient to prove that he is "actually innocent" of murder under the standard set forth. New evidence of actual innocence must be "material, not merely cumulative or impeaching." *Lucas v. Johnson*, 132 F.3d 1069, 1075 n.3 (5th Cir. 1998). To obtain relief under the "newly discovered evidence" standard, a petitioner must show that: "(1) the evidence is newly discovered and was unknown to the defendant at the time of trial; (2) the defendant's failure to detect the evidence was not due to a lack of diligence; (3) the evidence is material, not merely

cumulative or impeaching; and (4) the evidence would probably produce acquittal at a new trial"). *Id*.

The affidavits in question do not unequivocally show that Nelson is innocent of the charges. Chiquita avers in the June 2023 affidavit that Nelson first fired the gun in the air, then wrestled with the victim, then that she "heard the gun go off" and saw the victim fall. Doc. 16-10, p. 191 (SCR, Cause No. 2020-M-01417). Chiquita did not aver that she saw the gun go off – and thus could not say whether it appeared that Nelson intended to kill the victim – or did so in self-defense. Chiquita's June 2013 affidavit would probably not "produce acquittal at a new trial." *Lucas, supra*. The statement would not establish that no reasonable juror would have found Nelson guilty beyond reasonable doubt. *See McQuiggin, supra*. In addition, Chiquita's December 2023 affidavit centers on Nelson's attempt to explain why he did not obtain her statement earlier, not on the substance of the charges. Doc. 16-10, p. 87 (SCR, Cause No. 2020-M-01417).

Nelson's submissions in support of his federal petition do not even approach the standard necessary to excuse the untimeliness of his petition. *See id*. The submissions do not constitute new reliable evidence sufficient to establish that no reasonable juror would have found that he was guilty beyond a reasonable doubt. *See McQuiggin*, 569 U.S. at 386; *Schlup*, 513 U.S. at 324; *see also Pipkin v. Cain*, No. 3:23CV434-MPM-JMV, 2024 WL 2736162 (N.D. Miss. May 28, 2024) (rejecting petitioner's claim of "actual innocence" and dismissing petition with prejudice as untimely and for lack of substantive merit).

Finally, the actual innocence standard involves "*actual* as compared to *legal* innocence[.]" *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992) (emphasis added) (discussing the "miscarriage of justice" standard, which uses the same test as actual innocence); *accord Bousley*

*v. United States*, 523 U.S. 615, 623 (1998); *see also Callins v. Johnson*, 89 F.3d 210, 213 (5th Cir. 1996) (explaining that "[t]he term 'actual innocence' means *factual* as opposed to *legal* innocence," and this "means that the person did not commit the crime") (emphasis added). Factual innocence is an allegation by the defendant that he did not engage in the *conduct* underlying his conviction, while an affirmative defense implicates only *legal* innocence, not *factual* innocence. Put simply, "'actual innocence' means factual innocence, not mere legal insufficiency.") *Bousley*, 523 U.S. at 623.

In discussing the actual innocence standard, our sister court in the Southern District of Mississippi held that "the self-defense claim is a legal defense, and, consequently … rejected arguments based upon self-defense as not arguing factual innocence, but legal innocence." *Ellis v. Misskelley*, No. 3:08CV44-TSL-FKB, 2011 WL 847032, at *5 (S.D. Miss. Feb. 22, 2011), *report and recommendation adopted*, 2011 WL 841318 (S.D. Miss. Mar. 8, 2011) (citing Tenth Circuit cases and rejecting petitioner's self-defense argument as a basis for actual, factual innocence). Ultimately, the Southern District rejected self-defense as a claim of innocence because the petitioner "[did] not deny that he shot the victim[.]" 2011 WL 847032, at *5.

For these reasons, Nelson has not shown that he was actually innocent to overcome the one-year *habeas corpus* limitations period, and he filed his federal petition for writ of *habeas corpus* over two years beyond his January 17, 2022, AEDPA deadline.

### Timeliness Calculation

Under the prison "mailbox rule," the instant *pro se* federal petition for a writ of *habeas corpus* is deemed filed on the date the petitioner delivered it to prison officials for mailing to the district court. *Coleman v. Johnson,* 184 F.3d 398, 401, *reh'g and reh'g en banc denied,* 196 F.3d 1259 (5th Cir. 1999), *cert. denied,* 529 U.S. 1057, 120 S. Ct. 1564, 146 L.Ed.2d 467 (2000)

(citing *Spotville v. Cain,* 149 F.3d 374, 376-78 (5th Cir. 1998)). In this case, the federal petition was filed sometime between the date it was postmarked on May 1, 2024, and the date it was received and stamped as "filed" in the district court on May 6, 2024.[12] The instant petition was thus filed over two years after the January 22, 2022, filing deadline. As discussed in detail above, Nelson enjoys neither statutory nor equitable tolling. In addition, he may not use the "factual predicate" start date to render his petition timely; nor does the actual innocence exception to the limitations period apply. For these reasons, the State's motion to dismiss will be granted, and the instant petition for a writ of *habeas corpus* will be dismissed with prejudice and without evidentiary hearing as untimely filed under 28 U.S.C. § 2244(d). A final judgment consistent with this memorandum opinion will issue today.

  **SO ORDERED**, this, the 10th day of October, 2025.

                         _____
                         SENIOR JUDGE

---

[12] Nelson failed to date his federal *habeas corpus* petition (Doc. 1 at 15), but it was postmarked for mailing to the District Court for the Southern District of Mississippi on May 1, 2024 (Doc. 1-3).